BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re: Lyft, Inc., Passenger Sexual Assault Litigation* | )<br>)   MDL No. 3171<br>)<br>) |

**INTERESTED PARTY RESPONSE AND MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rules 6.1(c) and 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiff and Respondent, Jane Doe #1 ("Jane Doe"),[1] through undersigned counsel respectfully submits this Interested Party Response to the Motion for Transfer of Actions to the Northern District of California for Consolidated Pretrial Proceedings. Dkt. 1.[2] Jane Doe agrees that transfer is useful, necessary, and supported by numerous common questions of law and fact, and believes all pending actions should be transferred to and consolidated in the United States District Court for the Northern District of California.

## I.   INTRODUCTION

Jane Doe incorporates by reference all arguments articulated in Memorandum in Support of Plaintiffs' Motion for Transfer of Actions Under 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings filed by Plaintiff J.E. (Dkt. 1-1). Jane Doe agrees that transfer and coordination or consolidation is appropriate given the common legal and factual issues shared by her case, the cases listed in the original motion's schedule of actions (Dkt. 1-2), other related cases, and cases that may hereafter be filed. Transfer will avoid inconsistent rulings, preserve resources, and aid in the efficient resolution of these cases.

---

[1] Jane Doe's case, 1:25-cv-03325-STV (D. Colo.), is related to this MDL. *See* Dkt. 11.
[2] Dkt. Refers to filings in this MDL 3171.

1

This case, like those identified above, is filed by a survivor of sexual assault at the hands of a Lyft, Inc. ("Lyft") driver who was supposed to safely transport Jane Doe to her destination. Jane Doe's case, like the others related to this MDL, are premised on the fact that Lyft failed to adequately vet its drivers and failed to take appropriate safety precautions once it had notice that a subset of Lyft drivers were sexual predators and were engaging in widespread sexual assault while using the Lyft platform. The cases allege that Lyft was aware of the problem but nevertheless failed to conduct appropriate background checks, failed to adequately train and supervise its drivers, failed to adequately respond to complaints about predator drivers (and predation more generally), failed to adopt safety design changes in the Lyft application ("app") and driver platform, and failed to adopt standard safety measures such as video and audio surveillance.

## II.   ARGUMENT

### A.   Transfer and Consolidation or Coordination of All Actions Is Appropriate Under 28 U.S.C. § 1407

Title 28 U.S.C. § 1407 provides authorizes the JPML to transfer of actions to one district for coordinated or consolidated pretrial proceedings when actions pending in different districts involve one or more common questions of fact. *See* 28 U.S.C. §1407(a). Transfers are authorized when the Panel determines that such transfer will be for the convenience of the parties and witnesses and will further promote the just and efficient conduct of such actions. *Id.*

Jane Doe agrees that these matters should be coordinated. It is well-settled that the threshold test of transferability and coordination under § 1407 is the presence of common questions of law and fact among the matters where consolidation is sought. *In re Managed Care Litigation*, 246 F. Supp. 2d 1363, 1364 (J.P.M.L. 2003); *In re South African Apartheid Litigation*, 238 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002).

> **When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings**. Such transfers shall be made by the judicial panel on

multidistrict litigation authorized by this section upon its determination that **transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions**.

28 U.S.C. § 1407(a) (emphasis added).

If the related cases involve common questions, it is likely that they will benefit from consolidation or coordination. *In re Equity Funding Corp. of America Securities Litig*, 375 F. Supp. 1378, 1382 (J.P.M.L. 1974). Unique factual issues in the individual cases do not defeat transfer; nor do all factual issues need to be the same to qualify for MDL treatment. *In re Amsted Industries Inc. ERISA Lit.,* 162 F. Supp.2d 697, 698 (J.P.M.L. 2001). Indeed, commonalities in factual and legal questions need not be complete, nor even predominant, to merit transfer. *See In re Katz Interactive Call Processing Pat. Litig*., 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). "[I]ndividualized factual issues" do not "negate the efficiencies to be gained by centralization." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017).

The purpose of the multidistrict litigation process is to "eliminate the potential for contemporaneous pretrial rulings by coordinating district and appellate courts in multidistrict related civil actions." *In re Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Transfer of related actions to a single district for pretrial proceedings avoids conflicting pretrial discovery and ensures uniform and expeditious treatment in the pretrial procedures. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006).

Here, consolidation is warranted given the number of actions already pending, the likelihood that additional actions will be filed, and the common questions of fact and law that they share. Jane Doe is aware of 17 cases currently filed, and there are potentially hundreds, if not thousands, more to follow. Lyft, Inc. is a near-ubiquitous app-based transportation and technology company that provides transportation services throughout the United States. Lyft operates the Lyft app, founded in 2012, that connects consumers to a Lyft driver.

The number of assaults recognized by Lyft alone supports consolidation. Lyft has publicly

3

disclosed 10,519 sexual assault reports involving Lyft app users in its 2017-2019 Community Safety Report and 2020-2022 Safety Transparency Report.[3] However, Lyft identified more than 18,000 incidents of assault and harassment *in a single year* period in reports to the California Public Utilities Commission.[4]

Thus, the actions at issue here all arise from the same or similar nucleus of operative facts, and each focuses on the same course of conduct regarding the above-mentioned sexual assaults by defendant Lyft. Among the numerous common questions of fact and law are:

a) Lyft's duty to provide passengers with transportation free from assault;

b) Lyft's knowledge that its drivers have been sexually assaulting its passengers;

c) Lyft's failure to adopt or improve its safety procedures and policies;

d) Lyft's failure to require sexual harassment or assault training for its drivers;

e) Lyft's failure to conduct adequate background checks before hiring its drivers and otherwise failing to ensure that its drivers were fit to drive passengers;

f) Lyft's failure to implement safety features into its app;

g) Lyft's failure to address passengers' reports of sexual harassment, assault, and rape by Lyft drivers;

h) Lyft's failure to timely terminate drivers who assaulted passengers or were unfit to perform their duties;

i) Lyft's marketing tactics and failure to warn passengers of the risks of being sexually assaulted, harassed, or otherwise attacked by a Lyft driver;

j) Lyft's status as a common carrier; and

k) Lyft's false statements indicating that Lyft would provide safe rides to passengers.

Determination of these common issues in a single district will benefit the parties and witnesses and serve to promote the efficient prosecution and resolution of these cases. Without consolidation of these actions, a real and significant hazard of inconsistent rulings exists. Moreover, without

---

[3] Memorandum in Support of Plaintiffs' Motion for Transfer of Actions Under 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings by Plaintiff J.E. at 3, In re Lyft, Inc. Passenger Sexual Assault Litig., MDL No. 3171 (J.P.M.L. Oct. 6, 2025), Dkt. 1-1.
[4] *Id.*

consolidation, there is a much higher risk of judicial inefficiency, overlapping and inconsistent discovery rulings, and unnecessary expenses to all parties, and each respective court. Put simply, consolidation now will avoid serial briefing, duplicative discovery, inconsistent rulings, and will preserve judicial resources across the country.

     **B.**     **THE NORTHERN DISTRICT OF CALIFORNIA IS A SUITABLE FORUM FOR CONSOLIDATION OF THESE MATTERS**

If the JPML determines that centralization is appropriate, its next step is to find an available and convenient forum to handle the matter. *See Manual for Complex Litig.* § 22.33, at 367 (4th Ed. 2011). Factors to consider for the most appropriate forum include: (1) the location of parties, witnesses, and documents; (2) the accessibility of the proposed transferee district to parties and witnesses; and (3) the respective caseloads of the proposed transferee district courts. *See In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931–32 (J.P.M.L. 1980) (discussing factors); *see also* Manual for Complex Litigation (Fourth), § 20.131, pp. 220–21. A forum that satisfies these factors and that already has pending cases is favorable. *Id.* at § 22.33, pp. 366–67. The Panel also looks for a forum that "i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the resources and expertise to be able to devote the time and effort to pretrial matters that this docket is likely to require." *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003).

Lyft is headquartered in San Francisco, California; corporate witnesses and documents will thus be conveniently located and available in the Northern District. The Lyft JCCP[5] is being litigated in the San Francisco Superior Court thus providing further convenience for the Defendants. Finally, the Northern

---

[5] Nothing about the existence of the JCCP weighs against transfer. To the contrary, the Panel has repeatedly noted that the "[c]reation of an MDL likely will make it *easier* to coordinate, as needed, pretrial proceedings in both the state and federal cases, because there will now be just one judge handling the latter." *In re: Lipitor (Atorvastatin Calcium) Mktg., Salespractices & Prods. Liab. Litig. (No. II)*, 997 F. Supp. 2d 1354, 1356 (J.P.M.L. 2014) (emphasis added); *see also In re: Plavix Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 923 F.Supp.2d 1376, 1378–79 (J.P.M.L. 2013). The existing—and future—federal Lyft cases require the same sort of centralization to facilitate effective coordination as the JCCP inches forward in California state court.

District of California is well versed in the successful oversight of MDL litigation including the Uber MDL. Jane Doe is confident that this requested forum will effectively and efficiently manage the prospective docket should this matter be consolidated.

### III.   CONCLUSION

Jane Doe urges transfer and coordination or consolidation to the United States District Court for the Northern District of California.

November 10, 2025

Respectfully submitted,

/s/ Benjamin Gillig
Benjamin Gillig, Esq.
Sommer D. Luther, Esq.
Tara Doyle, Esq.
WAGSTAFF LAW FIRM
490 N. Lincoln St.
Denver, CO 80203
Phone: 303-376-6360
Sluther@wagstafflawfirm.com
bgillig@wagstafflawfirm.com
tdoyle@wagstafflawfirm.com

*Counsel for Plaintiff Jane Doe 1 in Jane Doe 1 v. Lyft Inc., 1:25-CV-3325 (Dist. Colo.)*