BETH A. STEWART
DAVID RANDALL J. RISKIN
A. JOSHUA PODOLL
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone:     (202) 434-5000
Facsimile:     (202) 434-5029
Email:  bstewart@wc.com
Email:  driskin@wc.com
Email:  apodoll@wc.com

WARREN METLITZKY
GABRIELA KIPNIS
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:     (415) 343-7100
Facsimile:     (415) 343-7101
Email:  wmetlitzky@conmetkane.com
Email:  gkipnis@conmetkane.com

*Attorneys for Lyft, Inc.*

## BEFORE THE UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re Lyft, Inc. Passenger Sexual Assault Litigation* | **MDL No. 3171** |

## LYFT, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR TRANSFER

# TABLE OF CONTENTS

BACKGROUND .................................................................................................................2

    A.    The Judicial Council of California Creates the JCCP.................................................2

    B.    Relevant Initial Proceedings Before the JCCP. ........................................................3

    C.    Counsel for the Federal Plaintiffs Avail Themselves of the JCCP.........................4

    D.    Plaintiffs' Counsel Disagree Over a Common-Benefit Fund in the JCCP. ............5

THE PANEL SHOULD NOT CREATE AN MDL ........................................................7

    A.    The JCCP Makes an MDL Unnecessary. ................................................................8

    B.    The Northern District of Texas Is the Most-Suitable Forum, Should the Panel Grant the Transfer Motion. ........................................................14

CONCLUSION...................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Gelboim v. Bank of America Corp.*,
  574 U.S. 405 (2015)........................................................................ 7, 8, 9

*In re Asbestos School Products Liability Litigation*,
  606 F. Supp. 713 (J.P.M.L. 1985) ........................................... 13

*In re Baby Food Marketing, Sales Practices and Products Liability Litigation*,
  544 F. Supp. 3d 1375 (J.P.M.L. 2021)..................................... 7

*In re California Wine Inorganic Arsenic Levels Products Liability Litigation*,
  109 F. Supp. 3d 1362 (J.P.M.L. 2015)................................. 8, 13

*In re Chromated Copper Arsenate (CCA) Treated Wood Products Liability Litigation*,
  188 F. Supp. 2d 1380 (J.P.M.L. 2002)................................... 12

*In re CVS Caremark Corp. Wage and Hour Employment Liability Litgiation*,
  684 F. Supp. 2d. 1377 (J.P.M.L. 2010)................................... 14

*In re DirectBuy, Inc., Marketing and Sales Practices Litigation*,
  682 F. Supp. 2d 1349 (J.P.M.L. 2010)................................... 14

*In re Electrolux Dryer Products Liability Litigation*,
  978 F. Supp. 2d 1376 (J.P.M.L. 2013)................................... 11

*In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litigation*,
  446 F. Supp. 242 (J.P.M.L. 1978)........................................... 12

*In re Glenn W. Turner Enterprises Litigation*,
  368 F. Supp. 805 (J.P.M.L. 1973)........................................... 14

*In re Iowa Beef Packers, Inc.*,
  309 F. Supp. 1259 (J.P.M.L. 1970)......................................... 7

*In re Lipitor (Atorvastatin Calcium) Marketing, Salespractices & Products Liability Litigation (No. II)*,
  997 F. Supp. 2d 1354 (J.P.M.L. 2014)................................... 10

*In re Lumber Liquidators Chinese Manufactured Flooring Products Marketing, Sales Practices & Products Liability*,
  109 F. Supp. 3d 1382 (J.P.M.L. 2015)................................... 10

*In re Paraquat Products Liability Litigation*,
544 F. Supp. 3d 1373 (J.P.M.L. 2021) ................................................................. 10

*In re Plavix Marketing, Sales Practices & Products Liability Litigation (No. II)*,
923 F. Supp. 2d 1376 (J.P.M.L. 2013) ................................................................. 10

*In re Reglan/Metoclopramide Products Liability Litigation*,
622 F. Supp. 2d 1380 (J.P.M.L. 2009) ...................................................... 8, 11, 12

*In re TikTok In-App Browser Consumer Privacy Litigations*,
669 F. Supp. 3d 1363 (J.P.M.L. 2023) ................................................................. 8, 9

*In re Varsity Spirit Athlete Abuse Litigation*,
677 F. Supp. 3d 1376 (J.P.M.L. 2023) ................................................................. 12

**STATUTES**

California Code of Civil Procedure § 404.1 .............................................................. 3
28 United States Code § 1407 ............................................................................. 3, 7

**OTHER AUTHORITIES**

*Manual for Complex Litigation (Fourth)* § 20.131 (2004) ................................. 7, 13
*Manual for Complex Litigation (Third)* § 31.14 (1995) ......................................... 12

iii

Plaintiff J.E. contends that one judge is needed to "supervis[e] case-specific and corporate discovery, establish[] a bellwether trial process, and issu[e] consistent rulings across the board" for cases alleging sexual assault and misconduct on the Lyft platform.  (Mot. 4.)  Such a consolidated proceeding is warranted, Plaintiff says, because "piecemeal litigation of hundreds of trial cases in multiple courtrooms … will inevitably place an undue burden on the courts, the public, and the litigants, and could result in a patchwork of inconsistent results."  (Mot. 4–5.)

Plaintiff's argument suffers from a simple, fundamental, and fatal flaw:  the proceeding Plaintiff describes (and asks the Panel to create) already exists.  For more than half a decade, *In re Lyft Rideshare Cases*, Judicial Council Coordination Proceeding 5061, has been pending in California Superior Court—a fact buried on page eleven of the transfer motion.  That proceeding—the "JCCP"—includes claims from hundreds of non-California plaintiffs who allege incidents outside of California, distinguishing it from the Uber JCCP where the court dismissed on *forum non conveniens* grounds claims brought by plaintiffs alleging out-of-state incidents.  The plaintiffs in the Lyft JCCP assert legal theories substantively indistinguishable from those in the at-issue federal complaints; indeed, the federal complaints track, often *verbatim*, complaints filed in the JCCP.  The parties there have been engaged in comprehensive discovery of Lyft.  The JCCP Court has issued rulings that address common legal and discovery issues.  And it has created a bellwether-trial process (with the next trial setting in April 2026).

The JCCP, in other words, already accomplishes Plaintiff's stated goal of avoiding "piecemeal litigation" and "a patchwork of inconsistent results."  Creating an additional proceeding on top of it would only create exactly the harms consolidation is meant to avoid—namely, inefficiency and the risk of duplicative rulings.  Plaintiff cannot credibly disagree.  The firms representing fifteen of the nineteen plaintiffs at issue in this transfer motion (including the firm

1

representing Plaintiff J.E.) also represent *nearly a quarter* of the plaintiffs in the JCCP.  Indeed, they have continued, since filing this motion, to file cases to be included in that proceeding.

Given the fact that the JCCP has been active for almost six years, and with the vast majority of common discovery completed, the Panel may wonder:  what explains the filing of an MDL petition now?  Shortly before Plaintiff J.E. filed her transfer motion, a dispute arose among plaintiffs' counsel in the JCCP over a common-benefit fund that would see non-leadership plaintiffs' firms compensate plaintiffs' leadership cohort for work they have done handling common issues.  None of the leadership firms represent a federal plaintiff at issue in the transfer motion, just as none of the firms representing the plaintiffs at issue in the transfer motion are part of that leadership cohort.  But those latter firms did oppose the establishment of a common-benefit fund.

Disagreements among plaintiffs' counsel may make leadership counsel's job more challenging and non-leadership counsel's position more frustrating.  But friction among lawyers in an existing consolidated proceeding does not warrant the creation of an entirely new one.  The Panel should deny Plaintiff's motion.

## BACKGROUND

### A.    The Judicial Council of California Creates the JCCP.

More than six years ago, in September 2019, a group of plaintiffs asked the Judicial Council of California to coordinate 21 actions against Lyft alleging sexual misconduct by drivers on its platform.  Those plaintiffs (like the plaintiff seeking transfer now) primarily asserted state-common-law claims against the company, such as negligence; negligent hiring, retention, and supervision; vicarious liability; and misrepresentation.

Over Lyft's opposition, the coordination court granted plaintiffs' petition, creating the JCCP in January 2020 and assigning it to the Complex Division of the San Francisco Superior

Court.  The coordination court reasoned that "[a]bsent coordination … various courts would be tasked with deciding the same factual issues on the same types of motions," which "would create confusion in the cases and not be in the interest of efficient resolution."  (Decl. of D. Riskin (Nov. 10, 2025), Ex. A (Coordination Order, *In re Lyft Rideshare Cases*, CJC-20-005061 (Jan. 17, 2020)), at 8.)  Consistent with that conclusion, the coordination court explained that "common questions of fact and law" predominated, and that coordination would serve the "convenience of all counsel by preventing adjudication of the same or substantially similar motions" and "avoid duplicative testimony at trial and during depositions."  (Riskin Decl., Ex. A (Coordination Order), 6–8.)[1]

**B.    Relevant Initial Proceedings Before the JCCP.**

Early on, the JCCP Court issued two decisions that bear on the transfer motion.  *First*, it appointed four firms to positions of leadership in the JCCP:  Levin Simes, LLP; Estey & Bomberger, LLP; Williams Hart Boundas, LLP; and Cutter Law PC.  (Riskin Decl., Ex. B (Order, *In re Lyft* (May 10, 2021)).)  Neither the firm representing the plaintiff who filed the transfer motion, nor any of the firms representing the other federal plaintiffs included in the transfer motion, are part of plaintiffs' leadership in the JCCP—or even have applied to be part of it.

*Second*, the JCCP Court denied Lyft's motion to dismiss, on *forum non conveniens* grounds, the claims of non-California residents alleging incidents that occurred outside of California.  (Riskin Decl., Ex. C (*Forum Non Conveniens* Order, *In re Lyft* (May 20, 2021)).)  The

---

[1] The coordination court found a JCCP warranted under standards of California Code of Civil Procedure § 404.1, which are similar to those under 28 U.S.C. § 1407.  *Compare* Cal. Code Civ. P. § 404.1, *with* 28 U.S.C. § 1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.  Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.").

court reasoned that "the JCCP process alleviates the burden on non-California plaintiffs," and "the overall savings of time and effort to the judicial system, both in California and interstate, far outweigh the burden placed on the individual forum court." (Riskin Decl., Ex. C (*Forum Non Conveniens* Order), 8.)  That decision distinguishes the Lyft JCCP from the later-created Uber JCCP, where the court granted Uber's *forum non conveniens* motion and dismissed the claims brought by plaintiffs alleging out-of-state incidents.

The Lyft JCCP thus has functioned like a federal MDL.  Plaintiffs residing in California and elsewhere have asserted claims alleging incidents that occurred nationwide.  As of today, there are 1,971 plaintiffs coordinated in the JCCP, 1,569 of whom bring claims arising from alleged incidents that took place outside of California.  Only 392 plaintiffs in the JCCP allege an incident in California.  (There are ten JCCP plaintiffs for whom Lyft does not currently know the state where the incident is alleged to have occurred.)

The parties have litigated vigorously in the JCCP.  Plaintiffs there have deposed more than 30 individual corporate witnesses, many additional Lyft case-specific witnesses, and multiple corporate representatives who have addressed dozens of topics; Lyft has produced more than 200,000 documents in corporate discovery; and both plaintiffs and Lyft have litigated dozens of discovery disputes and briefed dispositive motions multiple times.  The parties were set to proceed with a bellwether trial in the last week of October 2025 until it resolved days before *voir dire* was set to begin, and the next bellwether trial now is scheduled for spring 2026.  Throughout the pendency of the JCCP, the parties have resolved the claims of hundreds of plaintiffs.

**C.    Counsel for the Federal Plaintiffs Avail Themselves of the JCCP.**

Although plaintiffs' leadership counsel has done most of the work for the plaintiffs in the JCCP, non-leadership firms have represented bellwether plaintiffs—and at least two of the firms

representing federal plaintiffs at issue in the transfer motion represent plaintiffs in the next bell-wether pool. It therefore is unsurprising that non-leadership firms continue to add plaintiffs they represent to that proceeding (benefitting from the common work leadership has undertaken). That includes six firms representing the plaintiffs at issue in the transfer motion here. Today, those firms (which represent 15 of the 19 federal plaintiffs) represent more than 450 plaintiffs in the JCCP—including plaintiffs who allege incidents that occurred outside California:

| Firm | Federal Plaintiffs | Federal Plaintiffs Alleging Non-California Incidents | JCCP Plaintiffs | JCCP Plaintiffs Alleging Non-California Incidents |
|---|---|---|---|---|
| Nachawati Law Group | 7 | 7 | 72 | 54 |
| Peiffer Wolf Carr Kane Conway & Wise LLP | 3 | 3 | 113 | 87 |
| Chaffin Luhana LLP | 1 | 1 | 234 | 187 |
| Clarkson Law Firm, P.C. | 1 | 1 | 31 | 23 |
| Nigh Goldenberg Raso & Vaugh PLLC | 2 | 2 | 6 | 6 |
| **Total** | **14** | **14** | **456** | **357** |

These five firms represent nearly 25% of the plaintiffs with claims coordinated in the JCCP.

And that number is growing. Since Plaintiff J.E. filed the transfer motion, counsel representing the plaintiffs at issue in that transfer motion have filed seven more cases, comprising 31 plaintiffs, slated for coordination in the JCCP. (Riskin Decl., ¶ 8.) The overwhelming majority of those plaintiffs are non-California residents who allege non-California incidents.

### D.    Plaintiffs' Counsel Disagree Over a Common-Benefit Fund in the JCCP.

Of the nineteen cases at issue in the transfer motion, counsel filed sixteen in the last three months. Save for a few paragraphs of plaintiff-specific allegations in each complaint, the recent

federal complaints are substantively indistinguishable from the dozens of complaints the same plaintiffs' firms have filed in the JCCP.  They assert the same state-law causes of action, theories of liability, and, in many cases, page after page of identical allegations.[2]  Until three months ago, these firms found the JCCP a suitable venue for claims they were asserting against Lyft, whether the plaintiffs bringing those claims resided in California or not, and whether those plaintiffs alleged incidents that occurred in California or not.

Three months ago, the plaintiffs' lawyers seeking consolidation changed their strategy and began filing cases in federal court.  That change came one month after a dispute among counsel representing plaintiffs in the JCCP:

- On July 3, 2025, plaintiffs' JCCP leadership filed a motion for a common-benefit fund, through which non-leadership firms would reimburse the leadership cohort for litigating common issues in the JCCP.  (Riskin Decl., Ex. E (Common-Benefit Mot., *In re Lyft* (July 3, 2025)).)

- Non-leadership counsel opposed the motion, kicking off weeks of discussion between leadership and non-leadership firms over what a fund, if any, would look like.

- Two months ago, seven firms—collectively representing fifteen of the nineteen plaintiffs at issue in this transfer motion—filed a brief objecting to aspects of the proposed common-benefit fund.  That brief specifically referenced a planned (though not at that point sought) federal MDL and asked that any cases included in any future MDL be exempt from payments under the common-benefit fund.  (Riskin Decl., Ex. F (Non-Leadership Opp., *In re Lyft* (Sept. 2, 2025)), at 8.)

- Since plaintiffs' non-leadership JCCP counsel initially voiced their opposition to a common-benefit fund in July 2025, sixteen of the nineteen complaints at issue in the transfer motion have been filed (the remaining three had been filed in early 2024):

| Complaint | Filing Date |
|---|---|
| 2:25-cv-01589-DWC (W.D. Wash) | Aug. 20, 2025 |
| 1:25-cv-02786-JRR (D. Md.) | Aug. 25, 2025 |
| 3:25-cv-00649 (W.D.N.C.) | Aug. 27, 2025 |

[2] *See, e.g.*, Riskin Decl., Ex. D at 1–5 (comparing representative overlapping JCCP and federal allegations from Nachawati Law Firm), 6–10 (same for Peiffer Wolf), 10–18 (same for Chaffin Luhana), 18–25 (same for Nigh Goldenberg), 25–31 (same for Clarkson Law Firm), 32–38 (same for Wagstaff Law Firm).

| Complaint | Filing Date |
|---|---|
| 2:25-cv-02236-JEH-RLH (C.D. Ill.) | Aug. 27, 2025 |
| 1:25-cv-12423-IT (D. Mass.) | Sept. 2, 2025 |
| 3:25-cv-07369-SK (N.D. Cal.) | Sept. 2, 2025 |
| 3:25-cv-07396-SK (N.D. Cal.) | Sept. 3, 2025 |
| 3:25-cv-07412-SK (N.D. Cal.) | Sept. 3, 2025 |
| 3:25-cv-02464-K (N.D. Tex.) | Sept. 11, 2025 |
| 4:25-cv-04346 (S.D. Tex.) | Sept. 12, 2025 |
| 3:25-cv-07929-TSH (N.D. Cal.) | Sept. 17, 2025 |
| 3:25-cv-07930-AGT (N.D. Cal.) | Sept. 17, 2025 |
| 1:25-cv-05350-SDG (N.D. Ga.) | Sept. 18, 2025 |
| 7:25-cv-08206-JGLC (S.D.N.Y.) | Oct. 3, 2025 |
| 1:25-cv-03325-STV (D. Colo.) | Oct. 21, 2025 |
| 3:25-cv-02958-L (N.D. Tex.) | Oct. 31, 2025 |

The JCCP referred disputes regarding the common-benefit fund to a referee who, Lyft understands, is addressing them now.

## THE PANEL SHOULD NOT CREATE AN MDL

A party seeking centralization under § 1407 bears the burden of establishing three separate elements:  (i) an MDL would "promote the just and efficient conduct of such actions"; (ii) an MDL would benefit "the convenience of the parties and witnesses"; and (iii) the actions involve "common questions of fact" that are numerous and complex.  28 U.S.C. § 1407(a); *see also In re Iowa Beef Packers, Inc.*, 309 F. Supp. 1259, 1260 (J.P.M.L. 1970).  Transfer is appropriate only when it furthers the purposes of § 1407:  namely, to "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and courts."  *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (quoting *Manual for Complex Litig.* § 20.131 (4th ed. 2004)).  "Centralization under Section 1407 should be the last solution after considered review of all other options."  *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1377 (J.P.M.L. 2021).  Consistent with this principle, the Panel directed the parties to address "what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal

7

coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)."  (Dkt. No. 3.)

Given the JCCP, an MDL would not promote the just and efficient resolution of the cases and would not benefit the parties.  Nor can Plaintiff J.E. contend there are no alternatives to centralization—the JCCP is a readymade alternative that already yields the same benefits plaintiff contends an MDL would create.  It is telling the JCCP largely goes unmentioned in the transfer motion (even as counsel for the federal plaintiffs continue to put cases into it).

A.    **The JCCP Makes an MDL Unnecessary.**

Contrary to the goals of § 1407, creating an MDL—a second coordinated action—six years after the JCCP began would *foster* duplicative discovery, conflicting rulings, and increased time and expenditure of resources for all.  *Gelboim*, 574 U.S. at 410.  Both in this proceeding and generally, the Panel has recognized that informal coordination is preferable when there is already a large state court proceeding under way.  *See In re TikTok In-App Browser Consumer Privacy Litig.*, 669 F. Supp. 3d 1363, 1364–65 (J.P.M.L. 2023) (denying motion to centralize seventeen actions because those actions could be "handled most efficiently" in an existing coordinated proceeding); *In re Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*, 109 F. Supp. 3d 1362, 1363 (J.P.M.L. 2015) (discussing ways parties and courts can informally coordinate discovery and other pretrial activities without § 1407 transfer).  This is particularly true where the existing proceeding is "substantially advanced," "a significant amount of discovery has already taken place," *In re Reglan/Metoclopramide Prods. Liab. Litig.*, 622 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009), and the relevant actions "involv[e] a limited number of plaintiffs' counsel who are already working together." *Cal. Wine*, 109 F. Supp. 3d at 1363.  Precisely so here.  Plaintiff cannot meet her burden as to the § 1407 factors because there is already a mature, nationwide consolidated

proceeding addressing claims substantially similar, if not identical, to those at issue.

**The JCCP yields just and efficient conduct of the litigation for plaintiffs, Lyft, counsel, and the public.** The JCCP already is affording plaintiffs, Lyft, and counsel the efficiency gains attendant to a coordinated proceeding. It is the continued concentration of cases in the JCCP—not the creation of new procedural machinery—that would "eliminate duplication in discovery, avoid conflicting rulings and schedules, [and] reduce litigation costs" and time. *Gelboim*, 574 U.S. at 410. The parties and the JCCP court have devised orderly procedures for adding cases from plaintiffs across the country, for navigating discovery disputes (including before a discovery referee), for selecting bellwether cases for trial, and for resolving common questions through multiple rounds of dispositive-motion briefing. Starting some or all of those processes over again, as moving Plaintiff would have it, would consume enormous resources and create the duplication and inconsistency that § 1407 is intended to avoid.

The JCCP's benefits are not limited to California-resident plaintiffs, or to plaintiffs who allege an incident that occurred in California. Because of the JCCP Court's early *forum non conveniens* ruling, any plaintiff from any state may file a claim in the JCCP.[3] Plaintiffs from Hawaii to Maine, and Florida to Alaska, have done so. Creating a second nationwide coordinated proceeding would manufacture the very duplication, inefficiency, and risk of inconsistency MDLs are designed to avoid. *See In re TikTok*, 669 F. Supp. 3d at 1364–65.

That the JCCP involves nearly 2,000 plaintiffs from across the country distinguishes it from the Uber JCCP, and the follow-on Uber MDL. Plaintiffs with claims against Uber arising

---

[3] Plaintiffs' JCCP leadership recently made this same point, observing "[t]here was—and remains—no need for [an MDL] because the JCCP is a forum where any plaintiff can file. In practical terms, the JCCP is functioning as an MDL because cases from around the count[r]y have been filed … in San Francisco." (Riskin Decl., Ex. G (Common-Benefit Reply, *In re Lyft* (Sept. 3, 2025)), at 4.)

from alleged incidents outside of California could not bring their claims in the Uber JCCP as a result of that court's *forum non conveniens* ruling; the Uber MDL provided a centralized forum for them.  As regards Lyft, however, every plaintiff alleged an incident anywhere in the United States may proceed in the JCCP—and they have done so.

This fact also distinguishes Plaintiff's inapposite authority regarding concurrent state and federal proceedings.  (Mot. 11 (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 109 F. Supp. 3d 1382 (J.P.M.L. 2015), and *In re Paraquat Prods. Liab. Litig.*, 544 F. Supp. 3d 1373 (J.P.M.L. 2021)).)  *Lumber Liquidators*, for example, did not discuss any state-court proceeding whatsoever, let alone a nationwide coordinated state proceeding.  109 F. Supp. 3d at 1383.  And no party opposed coordination.  *See id.* Likewise, in *Paraquat*, defendants did not oppose centralization—rather, the dispute concerned the transferee district.  544 F. Supp. 3d at 1374.  Again, there was no discussion whether the Panel should create a new MDL on top of a long-running, nationwide state-court proceeding.[4]

The JCCP also undermines the transfer motion's efficiency arguments.  The motion asserts, for example, that "transfer will eliminate duplicative discovery" and "reduce the burden and costs of discovery significantly for both the parties … and the judiciary."  (Mot. 7.)  But the parties already have completed the vast majority of corporate discovery:  plaintiffs deposed dozens of Lyft witnesses and received more than 200,000 documents.  If the motion's theory is that the MDL would see corporate discovery begin anew, this would yield the very duplication

---

[4] Counsel for Plaintiff Jane Doe #1 (Case No. 25-cv-03325 (D. Colo.) emailed an interested-party response (but appears not to have filed it).  That brief cites two additional cases for the proposition that the existence of a JCCP does not preclude transfer:  *In re Lipitor (Atorvastatin Calcium) Marketing, Salespractices & Products Liability Litigation (No. II)*, 997 F. Supp. 2d 1354 (J.P.M.L. 2014) and *In re Plavix Marketing, Sales Practices & Products Liability Litigation (No. II)*, 923 F. Supp. 2d 1376 (J.P.M.L. 2013).  But as with *Lumber Liquidators* and *Paraquat*, neither *Lipitor* nor *Plavix* considered an MDL in the face of an existing, comprehensive, coordinated state-court proceeding.

against which the motion argues. *Cf. Gelboim*, 574 U.S. at 410 (transfer intended to "eliminate duplicative discovery," not encourage it). And when the motion offers that "[t]he Panel has long endorsed th[e] rationale … that 'prudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary'" (Mot. 8 (quoting *In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984)), it underscores why the Panel should not create an MDL given the JCCP.

Far from "minimiz[ing] the inconvenience and expense of duplicative discovery" (Mot. 8), creating a federal MDL would do the opposite.

**The JCCP is convenient for the parties and witnesses.** After years of coordinated litigation in the JCCP, this is a paradigm case where existing proceedings are "substantially advanced," such that centralization would not convenience either the parties or witnesses. *Reglan/Metoclopramide*, 622 F. Supp. 2d at 1381; *see also In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1376–77 (J.P.M.L. 2013) (denying centralization of 35 actions because "litigation over the Electrolux dryers … is at this stage quite mature"). The relevant corporate witnesses already have sat for their depositions, and exhaustive company-wide discovery has already taken place. Doing this again would be *inconvenient*.

The transfer motion makes the conclusory claim that an MDL "will make this litigation far more … convenient for all involved" and "reduce the burden on the federal judiciary" (Mot. 9), but neither of these arguments holds up. Non-leadership counsel's recent strategy of filing one-off cases across the federal judiciary has had the obvious effect of making litigation and resolution *less* convenient for all involved and needlessly *increasing* the burden on the judiciary.

Of course, if a plaintiff prefers to pursue their claims against Lyft in federal court (if there is subject-matter jurisdiction), that is their prerogative. (Mot. 11 n.9.) But there are far simpler

11

ways to facilitate coordination and information-sharing to resolve individual federal matters than forming a second nationwide coordinated proceeding.  *See In re Chromated Copper Arsenate (CCA) Treated Wood Prods. Liab. Litig.*, 188 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) ("[A]lternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings." (citing *In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) and *Manual for Complex Litig., Third*, § 31.14 (1995))).  Counsel can coordinate on a case-by-case basis to avoid duplicating work that has already been completed in the JCCP.  This will be straightforward given the majority of the federal plaintiffs are represented by firms participating in the JCCP.  Those lawyers are already coordinating with Lyft's counsel in substantially-similar cases.  *In re Varsity Spirit Athlete Abuse Litig.*, 677 F. Supp. 3d 1376, 1378 (J.P.M.L. 2023).  For example, informal information-sharing agreements permitting non-leadership JCCP counsel to use the JCCP discovery in their federal cases is a far-less-expensive path than creating a redundant centralized proceeding six years on.

**The JCCP is addressing any common questions.**  Insofar as there are "common questions" plaintiffs' claims implicate, the JCCP has answered, and will continue to answer, them.  Indeed, the JCCP Court already has begun to address the issues the transfer motion contends are common matters an MDL would be positioned to resolve.  (Mot. 6.)  As the motion contends, a centralized forum would avoid the "risk of inconsistent rulings"; the effort to create a second nationwide proceeding would inject that very possibility, undermining a principle purportedly motivating the transfer motion.  That is why the Panel routinely declines to create an MDL where existing proceedings already have begun answering "common questions."  *See Reglan/Metoclopramide*, 622 F. Supp. 2d at 1381 ("The proponents of centralization have failed to convince us

that any remaining common questions of fact among these actions are sufficiently complex and/or numerous to justify Section 1407 transfer at this time."); *In re Asbestos Sch. Prods. Liab. Litig.*, 606 F. Supp. 713, 714 (J.P.M.L. 1985) (denying centralization where "the common questions of fact … have been extensively litigated").

* * * * *

The relatively small number of federal cases bolsters the arguments against centralization. *See Manual for Complex Litig.* § 20.131 (4th ed.) ("[T]hose advocating transfer bear a heavy burden of persuasion when there are only a few actions, particularly those involving the same parties and counsel."). The 19 plaintiffs at issue in the transfer motion are less than one percent of the 1,971 plaintiffs in the JCCP. And all but four of the law firms representing the federal plaintiffs also represent plaintiffs in the JCCP. As the Panel has observed, the fact that— as here—counsel is "the same … and/or … working in coordination," with counsel in an existing state proceeding cuts strongly against formal centralization. *Cal. Wine*, 109 F. Supp. 3d. at 1363. The assertion in the transfer motion that coordination with JCCP counsel "will become infeasible" absent an MDL thus is hard to understand—not to mention entirely speculative. Particularly so given that counsel to the at-issue plaintiffs here *continue to file cases in the JCCP.*

The § 1407 factors cut strongly against a redundant federal MDL. Far from promoting the "just and efficient conduct" of litigation, an MDL would do the opposite. It would yield a new forum that duplicates the existing JCCP in every way except one: new plaintiffs' firms could jockey for leadership roles. This is antithetical to the purpose of § 1407 centralization. Because plaintiff has not satisfied the § 1407 requirements, the Panel should deny the transfer motion.

Creating an MDL is no small undertaking; it would entail great expense of the parties and

13

consume significant judicial resources for the transferee judge and district. That is why when a motion to create an MDL "appears intended to further the interests of particular counsel more than those of the statute, [the Panel] would certainly find less favor with it." *In re CVS Caremark Corp. Wage & Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010).[5]

That concern applies here. After all, counsel for the plaintiffs at issue in the transfer motion together represent more than 450 plaintiffs in the JCCP, and they have continued to add actions to that proceeding even after Plaintiff J.E. filed the transfer motion. They have done so without ever suggesting the JCCP is an inadequate proceeding for yielding consistent rulings on common questions, conserving party and judicial resources, or streamlining discovery. That the transfer motion fails to explain why an MDL is justified given that existing coordinated proceeding should pique the Panel's curiosity; so too should the fact the motion's only mention of the JCCP is buried on page eleven. And it is not simply the transfer motion that downplays the JCCP. The interested-party response of Plaintiff A.D. filed by Chaffin Luhana LLP (ECF 26), a firm representing over 200 plaintiffs in the JCCP, similarly relegates discussion of that proceeding to a single sentence near the end of the brief. And the response on behalf of three plaintiffs filed by Peiffer Wolf Carr Kane Conway & Wise LLP fails to mention the JCCP at all, even as that firm represents 113 plaintiffs in that proceeding.

## B.    The Northern District of Texas Is the Most-Suitable Forum, Should the Panel Grant the Transfer Motion.

Any MDL comprising actions against Lyft should proceed in the Northern District of

---

[5] *See In re DirectBuy, Inc. Mktg. & Sales Pracs. Litig.*, 682 F. Supp. 2d 1349, 1350 (J.P.M.L. 2010) (denying centralization where "attorneys for plaintiffs supporting centralization expressed concern that they were 'frozen out' of settlement discussions in another action"); *cf. In re Glenn W. Turner Enters. Litig.*, 368 F. Supp. 805, 805–06 (J.P.M.L. 1973) (denying motion to retransfer MDL cases where movant's counsel appeared "dissatisfied with the course of the coordinated or consolidated pretrial proceedings").

Texas, a jurisdiction in a state that is a major market for Lyft and home to four of the nineteen federal plaintiffs.

*First*, the Northern District of Texas has significant experience in multi-district litigation—but it only has two active MDLs.  (The Northern District of California, by contrast, has fourteen active MDLs, and currently has more pending MDLs than any other district.[6])

*Second*, judges in the Northern District of Texas have smaller dockets than those in the Northern District of California, presiding over roughly half the number of civil cases on average—175 cases per judge in the former, but 347 cases per judge in the latter.[7]

*Third*, the median time to resolve a civil case in the Northern District of Texas is a fraction of the median time in the Northern District of California—5.5 months in the former, but 20.5 months in the latter.[8]  Indeed, according to the Federal Judicial Center, of the 94 federal judicial districts, the Northern District of California's median time to resolve a civil case is the third slowest in the nation.  Thus, if a streamlined, efficient resolution is the goal, available statistics suggest sending the matters to the Northern District of Texas is far preferable to centralizing the cases before an already-overburdened court in the Northern District of California.

*Fourth*, of the nineteen federal plaintiffs, four reside in Texas (the most of any state), four of the alleged incidents occurred in Texas (the most of any state), and plaintiffs filed three of the actions in Texas (the second-most of any state).  If the Panel is going to create an MDL

---

[6] https://cand.uscourts.gov/about-court/court-programs-services/multidistrict-litigation-mdl; https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-3-2025.pdf.

[7] https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-1.

[8] https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-5.

notwithstanding the coordinated California state proceeding, it makes sense to venue it in a jurisdiction other than California. This would maximize the independent value of a federal corollary to the JCCP and would minimize the redundancy.

There is no need for a nationwide consolidated proceeding in San Francisco because one already exists. And as the vast majority of company-specific discovery—both document productions and corporate depositions— already has taken place, the typical concern for the location of the corporate witnesses and evidence is less pertinent. Instead, given most of the remaining discovery to be completed in the federal cases would be *plaintiff*-specific, a more-centrally-located venue would be more convenient for the largest number of federal plaintiffs—who currently reside across the United States. The Northern District of Texas, of course, is home to Dallas, with its large airports serving locations across the country.

Nor, in all events, would it be appropriate to create another MDL in front of Judge Breyer. Judge Breyer already is presiding over multiple MDLs, including the Uber MDL.[9] Having the same judge preside over two MDLs on similar topics not only would overburden Judge Breyer, but also would risk one defendant's arguments affecting the independent litigation strategy of the other. Although their business models are similar in some respects, Uber and Lyft are not one and the same, and their strategies and defenses in this litigation are distinct, as is the factual background and discovery. If there is to be a Lyft MDL in the Northern District of California, it makes more sense to assign it to a judge who is not presiding over an MDL involving its largest competitor.

Nor does the motion give any good reason to create an MDL in the Western District of

---

[9] According to the November 3, 2025 roster of pending MDLs, selecting Judge Breyer to preside over the Lyft MDL would mean he would be overseeing more active MDLs at one time than any other federal district judge. *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-November-3-2025.pdf.

Washington, which has only one case subject to the transfer motion and is not—as the motion claims—Lyft's "secondary headquarters." (Mot. 14.)  The webpage Plaintiff cites as supposed evidence for that title says nothing of the sort.[10]  (All it says, in fact, is that "Seattle is one of Lyft's larger offices," although less than half as large as Lyft's New York City office, according to the same webpage.)  The other reasons Plaintiff gives for choosing this district—that Seattle has a major airport and that no judge in the Western District of Washington has a pending MDL (Mot. 14–15)—apply equally to the Northern District of Texas.

The alternative forum interested party Plaintiff A.D. proposes—the District of Massachusetts—also is inferior to the Northern District of Texas.  For one thing, Plaintiff A.D.'s case is the only at-issue federal complaint in that jurisdiction, and Plaintiff A.D. is the only federal plaintiff who alleges an incident in that state.  For another, the median time to resolve a civil case in the District of Massachusetts is 7.4 months—more than 34% longer than that of the Northern District of Texas.[11]  And the District of Massachusetts is less centrally located than the Northern District of Texas.  Although the District of Massachusetts is not a more-suitable forum than the Northern District of Texas, that Plaintiff A.D. proposed it is telling in one respect:  it underscores the benefit of setting a Lyft MDL (if any) somewhere other than the west coast.

No MDL is warranted for the reasons detailed above.  But if the Panel creates an MDL, it should set it in a jurisdiction other than on the west coast, which would aid the convenience of parties and witnesses who are not found in the west and maximize the benefits of a second coordinated proceeding.

---

[10] *See* https://www.lyft.com/careers/life-at-lyft (last accessed Nov. 6, 2025); *cf.* Mot. 14.

[11] https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-5.

## CONCLUSION

For the foregoing reasons, the Panel should deny Plaintiff's motion.


Dated:  November 10, 2025                    _/s/ David Randall J. Riskin_____

                                            Beth A. Stewart
                                            David Randall J. Riskin
                                            A. Joshua Podoll
                                            WILLIAMS & CONNOLLY LLP
                                            680 Maine Ave., S.W.
                                            Washington, DC 20024
                                            Tel: (202) 434-5000
                                            Fax: (202) 434-5029

                                            Warren Metlitzky
                                            Gabriela Kipnis
                                            CONRAD | METLITZKY | KANE LLP
                                            217 Leidesdorff St.
                                            San Francisco, CA 94111
                                            Tel:  (415) 343-7100
                                            Fax: (415) 343-7101

                                            *Attorneys for Lyft, Inc.*