BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re: Lyft, Inc. Passenger Sexual Assault Litigation* | )<br>)  MDL Docket No. **3171**<br>)<br>) |

**PLAINTIFF-MOVANT J.E.'S REPLY SUPPORT OF MOTION FOR TRANSFER OF ACTIONS UNDER 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Lyft concedes in its opposition to transfer, "Of course, if a plaintiff prefers to pursue their claims against Lyft in federal court (if there is subject-matter jurisdiction), that is their prerogative." ECF 29 at 11. Indeed it is, and that is the point. Lyft imagines that an MDL is unnecessary because this Panel may simply shunt federal actions from around the country into a California state court proceeding. But 28 U.S.C. § 1407 provides no such mechanism, nor does any other provision of law. Plaintiff-Movant J.E. respectfully submits this Reply in support of her Motion for Transfer of Actions Under 28 U.S.C. § 1407 to the United States District Court for the Northern District of California or, alternatively, the Western District of Washington. Movant incorporates herein the arguments in the Interested Party Responses filed by Plaintiffs Means, Spano, and Stencel, Jane Doe, and A.D. *See* ECF 27, 28, 29.

**I. Pending State Court Actions Do Not Preclude Federal Consolidation**

It is well-established that the test for centralization is established by 28 U.S.C. § 1407. *In re Managed Care Litigation*, 246 F. Supp. 2d 1363,1364 (US. Jud. Pan. Mult. Litig. 2003). Nevertheless, Lyft attempts to substitute its own standard (without any supporting authority) under which centralization is only allowed if there are no similar proceedings in state court. *See* ECF 29 at 7–8. Lyft's fictional standard is inconsistent with the requirements of § 1407 and the longstanding practice of this Panel. Lyft's argument only serves to prove Movant's point: the Lyft

JCCP has been pending for, as Lyft states, "more than half a decade," ECF 29 at 1, and yet, the litigation has not resolved. Lyft may not like the idea of both a state and a federal consolidated action (and indeed devotes six pages of its response to a rant about this), but Lyft's argument is entirely devoid of any legal authority to substantiate these gripes. Alas, a party not liking the legal strategy of its opponent does not constitute grounds for denial of Movant's Petition.

In the interest of entertaining Lyft's argument, consider the alternatives to an MDL: nineteen individual plaintiffs (and potentially hundreds or thousands more to come) will proceed with their claims in federal courts across the country. If Movant's Petition is denied, these federal cases will not magically transform into California state court actions. Diversity jurisdiction exists in each case and there is no basis upon which to remand any of these cases to state court. Lyft repeatedly points to *Gelboim v. Bank of America Corp.*, but *Gelboim* supports Movant's point: it would be more efficient not to force nineteen (and counting) federal courts to deal with common issues. *See* 574 U.S. 405, 410 (2015). The mere fact that Plaintiffs otherwise *could* file in state court does not mean they *must*. Nor does it change the fact that federal courts remain an available and appropriate venue for these cases. One federal court, rather than nineteen or more, can effectively manage these cases through an MDL.

Lyft further has no basis for its assertion that MDLs are unnecessary where a coordination is already underway. Though Lyft cites *In re TikTok In-App Browser Consumer Privacy Litigation* for the proposition that the Panel "recognized that informal coordination is preferable when there is already a large state court proceeding underway." ECF 29 at 12 (citing *In re TikTok*, 669 F. Supp. 3d 1363, 1364 (U.S. Jud. Pan. Mult. Lit. 2023)). The Panel did no such thing. Rather, because there was a preexisting *federal MDL* involving overlapping factual questions, the Panel concluded that creating a second MDL was unnecessary and transferred the cases that were the

subject of the *TikTok* petition to the existing MDL. *In re TikTok*, 669 F. Supp. 3d at 1364. Here, of course, this is not an option. Lyft further relies on decisions in which the Panel concluded consolidation was inappropriate for cases involving only two actions, *see In re: California Wine Inorganic Arsenic Levels Prods. Liab. Litig.,* 109 F. Supp. 3d 1362, 1363 (U.S. Jud. Pan. Mult. Lit. 2015) (denying petition involving only two actions); *In re Chromated Copper Arsenate (CCA) Treated Wood Prods. Liab. Litig.*, 188 F. Supp. 2d 1380, 1381 (U.S. Jud. Pan. Mult. Lit. 2002) (same), or cases in which the actions lacked a common defendant, *see In re Baby Food Mkg.*, *Sales Practices, & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1376–77 (U.S. Jud. Pan. Mult. Lit. 2021) (describing claims against various defendants "likely to rise or fall on facts specific to that defendant"); *In re Reglan/Metoclopramide Prods. Liab. Litig.,* 622 F. Supp. 2d 1380, 1381 (U.S. Jud. Pan. Mult. Lit. 2009) (denying petition where there was "no single common defendant" and several of the actions subject to the petition had been pending for nearly ten years). Here, Lyft is the only defendant, there are nineteen actions (and this number is expected to grow), and the cases subject to Movant's Petition were all filed recently. *See* ECF 1-2, 11, 22. In circumstances such as this, transfer under 28 U.S.C. § 1407 is warranted for the convenience of the parties and witnesses and to promote the just and efficient conduct of the actions. *See*, *e.g.*, *In re: DePuy Orthopaedics, Inc., ASR Hip Implant Prods. Liab. Litig.,* 753 F. Supp. 2d 1378, 1379 (U.S. Jud. Pan. Mult. Lit. 2010) (centralizing litigation against a single defendant with eight actions pending); *In re: Propecia (Finasteride) Prods. Liab. Litig.,* 856 F. Supp. 2d 1334, 1335 (U.S. Jud. Pan. Mult. Lit. 2012) (centralizing nine cases); *In re: Actos Prods. Liab. Litig.*, 840 F.Supp.2d 1356 (U.S. Jud. Pan. Mult. Lit. 2011) (centralizing eleven cases) *In re: Fluoroquinolon Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1378 (U.S. Jud. Pan. Mult. Lit. 2015) (centralizing twenty actions); *In re: Tasigna (Nilotinib) Prods. Liab. Litig.*, 555 F. Supp. 3d 1363, 1364 (U.S. Jud. Pan. Mult. Lit. 2021)

(centralizing twenty actions). Movant further anticipates many more additional cases will be filed after January 1, 2026.

Indeed, contrary to Lyft's assertion that the existence of a state consolidation counsels against creation of an MDL, this arrangement is common and does not present a reason to deny a petition for an MDL. Unsurprisingly, Lyft has failed to cite a single case where an MDL was denied because of the presence of a state court consolidated action. Nearly every MDL ends up with at least one coordinated state court proceeding. Examples include the following:

| | |
|---|---|
| **Atrium C-Qur Mesh** | **MDL:** *Atrium Medical Corp. C-Qur Mesh Products Liability Litigation,* MDL No. 2753<br><br>**New Hampshire State Court:** *Jean A. Downie v. Atrium Medical Corporation* (Case No. 226-2013-CV-00155)*, Gorham, et al. v. Atrium Medical Corporation, et al.*, No. 212-2015-cv-00035, *Brown et al. v. Atrium Medical Corporation, et al.*, No. 212-2015-cv-00036, *Hayward et al. v. Atrium Medical Corporation, et al.*, No. 212-2015-cv-00087 |
| **Bard Hernia Mesh** | **MDL:** *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation,* MDL No. 2846<br><br>**Rhode Island: State Court** *In re: Davol/C.R. Bard Hernia Mesh Multi-Case Management,* PC-2018-9999 |
| **Covidien Hernia Mesh** | **MDL:** In Re: Covidien Hernia Mesh Products Liability Litigation No. II, MDL 3029 (MA)<br><br>**Massachusetts State Court:** *Bettie Ann Smith v. Covidien PLC, et al.*, Middlesex Superior Court No. 1781CV01845<br><br>**Minnesota State Court:** *In re Covidien Hernia Mesh Litigation, Hennepin County District Court*, No. 27-CV-21-14780 |
| **Depuy ASR Hips** | **MDL:** *In re: DePuy Orthopaedics, Inc., ASR Hip Implant Prods. Liab. Litig.,* MDL No. 2197<br><br>**New Jersey State Court:** *In re: DePuy ASR Hip Implants Litigation*, Case No, 293, Master Docket No. BER-L-3971-11 |

| | |
|---|---|
| **Ethicon Physiomesh** | **MDL:** *In RE: Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation,* MDL No. 2782<br><br>**New Jersey State Court:** *In Re: Physiomesh Litigation (Flexible Composite Mesh)*, Case No. 627, Superior Court of New Jersey, Law Division, Atlantic County |
| **Levaquin (Fluoroquinolone)** | **MDL:** *In re: Fluoroquinolone Prods. Liab. Litig.*, MDL No. 2642<br><br>**New Jersey State Court:** *In re Levaquin Products Liability Litigation*, Case No. 286 |
| **Paraquat** | **MDL:** *In re: Paraquat Prods. Liab. Litig., MDL No. 3004*<br><br>**Pennsylvania State Court:** *In re: Paraquat Prods. Liab. Litig.*, 220500559. |
| **Propecia (Finasteride)** | **MDL:** *In re: Propecia (Finasteride) Products Liability Litigation*, MDL No. 2331<br><br>**New Jersey State Court:** *In re Propecia Litigation*, CASE NO. 623 |
| **Tasigna (Nilotinib)** | **MDL:** *In re: Tasigna (Nilotnib) Products Liability Litigation*, MDL No, 3006<br><br>**New Jersey State Court:** *In re Tasigna*, BER-L-5018-21-MCL, Case No 635 |
| **Uber** | **MDL:** *In re: Uber Tech. Inc. Passenger Sexual Assault Litigation,* MDL No. 3084<br><br>**California State Court:** *In Re: Uber Rideshare Cases*, Judicial Council Coordination Proceeding Case No. CJC-21-005188; |
| **Zantac (Ranitidine)** | **MDL:** *In Re: Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924<br><br>**Delaware State Court:** *In re: Zantac (Ranitidine) Litigation,* C.A. No. N22C-09-101 ZAN<br><br>**California State Court:** *In re Ranitidine Cases,* Judicial Council Coordination Proceeding Case No. 5150 |

Each of these actions had varying degrees of coordination, but nearly all were permitted to obtain at least some separate documents and take different or additional depositions. Similarly, here, Plaintiffs intend to coordinate with the JCCP to the extent possible but anticipate that due to differences in legal strategy and certain additional theories (e.g., product liability theories), Plaintiffs here will need different or additional documents, deposition, and anticipate certain differences in experts, as was the case with the Uber MDL and JCCP. However, without the benefit of an MDL, each Plaintiff would not only have to coordinate with the JCCP but with each of the separately pending federal actions as well.

## II. Centralization and Consolidation Under 28 U.S.C. § 1407 is Warranted

Centralization is appropriate "[w]hen civil actions involving one or more common questions of fact are pending in different districts" and "transfers of such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). Lyft does not dispute that the actions involve "one or more common questions of fact." *See* ECF 29 at 12. Nor does it dispute that "transfers of the action will be for the convenience of parties and witnesses" or that they will "promote the just and efficient conduct of such actions," *see generally id.* Instead, its dispute is centered on the idea that the JCCP, would serve the purposes of 28 U.S.C. § 1407 better than an MDL. Lyft's preference for all cases against it to proceed in state court, is, however, immaterial. The cases are in federal court and will stay there; the issue before the Panel is whether consolidation before a single *federal* judge serves the purposes of the statute. It does.

*First*, consolidation and transfer (to an MDL) will promote the just and efficient conduct of the actions. In its opposition, Lyft expresses concern about the potential for an MDL to duplicate discovery produced in the JCCP. ECF 29 at 9. Even assuming that plaintiffs in these federal actions

were inclined to proceed identically to the JCCP plaintiffs (they are not),[1] Lyft's argument ignores the fact that if an MDL is denied, its fear about duplicate discovery will be multiplied, rather than reduced. These same individuals will still have to be deposed; documents will still need to be produced, and motions will still need to be heard—but twenty or more times, instead of one or two. While several attorneys do have cases filed in both state and federal court, some counsel for plaintiffs in Schedule A do not. While all parties will endeavor to work together, it is nearly impossible to completely coordinate or expect completely consistent rulings across eleven jurisdictions and counting.

*Second*, consolidation and transfer (to an MDL) will promote the convenience of the parties and witnesses. While Lyft suggests that the JCCP may also serve this purpose for cases filed in state court, it does not make any other forum inconvenient.[2] Lyft's reliance on *In re Electrolux Dryer Products Liability Litigation* is inapposite. There, the petition was denied because the actions to be consolidated were already at a highly advanced stage with some of the actions that

---

[1] Plaintiffs are the masters of their pleadings and get to control their litigation strategy, including whether to proceed in federal court pursuant to federal diversity jurisdiction. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("The plaintiff is the master of the complaint and therefore controls much about her suit. She gets to determine which substantive claims to bring against which defendants. And in so doing, she can establish—or not—the basis for federal court's subject matter jurisdiction.") (quotations and citations omitted).

[2] Lyft also uses its Response to engage in unfounded, inaccurate speculation about the motives of plaintiff's counsel. ECF 29 at 14. While it is unsurprising that Lyft believes a state court action pending for over six years without resolution is the best proceeding for these cases, not all plaintiffs agree. Lyft relies on *In re CVS Care-mark Corp. Wage & Emp. Pracs. Litig.*, However, in *In re CVS,* the issue of "motives" became relevant only because the majority of plaintiffs and defendants opposed centralization of cases with widely varying procedural postures—not because a defendant made vague allusions to other forums that the plaintiffs could have filed in. 684 F. Supp. 2d. 1377, 1379 (U.S. Jud. Panel. Mult. Lit. 2010). Lyft's reliance on *In re DirectBuy, Inc. Mktg. & Sales Pracs. Litig.*, 682 F. Supp. 2d 1349, 1350 (U.S. Jud. Panel. Mult. Lit. 2010) is similarly inappropriate. There, plaintiff's counsel suggested the action should be centralized for their own convenience without making any showing with respect to the parties; the court found attorney-related concerns irrelevant. *Id.; In re Glenn W. Turner Enters. Litig.*, 368 F. Supp. 805, 805–06 (U.S. Jud. Panel. Mult. Lit.1973) (motion to transfer existing MDL to another district).

were subject to the petition already having been tried—not because a separate proceeding that was not subject to the Petition was advanced. 978 F. Supp. 2d 1376, 1377 (U.S. Jud. Panel. Mult. Lit. 2013).[3] Here, the actions subject to the consolidation order have all just been filed. None have proceeded through discovery, and none have gone to trial. That other cases against Lyft exist and have proceeded through discovery should not prevent these plaintiffs from conducting their own discovery and litigating their cases against Lyft separately. Lyft notes in its brief that conducting discovery again would be "*inconvenient*", ECF 29 at 11 (emphasis in original), but certainly conducting discovery nineteen (or hundreds) more times is what would be inconvenient. Lyft may well prefer to litigate in state court. However, plaintiffs are entitled to their own litigation strategy, and diverse plaintiffs can file in federal court even if other plaintiffs have filed their cases in state court.

### III. The Northern District of Texas is Not An Appropriate Forum

Lyft suggests that, if an MDL is established, the Panel should consolidate cases in the Northern District of Texas because several plaintiffs reside in Texas.[4] ECF 29 at 14. Evidently assuming that plaintiffs will replicate, exactly, the discovery from the JCCP, Lyft makes the baseless assertion that the only discovery at issue will be case-specific discovery. *Id.* at 16. However, there is a long history of state and federal coordinated actions proceeding simultaneously with different discovery in each. *See supra* Fig. 1. Plaintiffs will request documents and depositions from Lyft—none of which are located in or near Texas.

---

[3] Lyft's reliance on *In re Asbestos Sch. Prods. Liab. Litig.*, is similarly mis placed because there, too, the actions subject to the petition before the Panel were all advanced, and some had already been tried. 606 F. Supp. 713, 714 (U.S. Jud. Panel. Mult. Lit. Lyft 1985). Additionally, "the great majority of parties" opposed centralization. *Id.*

[4] The suggestion that the Northern District of Texas is convenient for all cases involving Texas incidents is absurd. For example, Plaintiff Jane Doe CM was assaulted in Harris County, Texas, which is located in the Southern District of Texas and is approximately four hours from the courthouse in the Northern District of Texas.

While Lyft maintains a corporate presence in San Francisco, Seattle, New York City, and Washington, DC (and plaintiffs have filed cases in jurisdictions in or near each city), Lyft does not maintain any corporate presence in Texas.[5] In particular, Lyft has an extensive history on the West Coast. Lyft is headquartered in Seattle and maintains one of its larger offices nearby in Seattle.[6] This is unsurprising given that Lyft first launched in San Francisco, and shortly after in Seattle.[7] Since then, Lyft usage has expanded in these regions and, with it, so have reports of sexual assault.

In addition to their proximity to key witnesses and documents—that will cut across all cases—the Northern District of California and Western District of Washington each have unique benefits that the Northern District of Texas lacks. The Northern District of California is collocated with the San Francisco County Superior Court, where the state court action is pending. This will promote state and federal coordination. The Western District of Washington is particularly adept at managing its docket. While Lyft asserts that the Northern District of Texas manages its docket more efficiently than the other districts requested because the median time for resolution of is shorter in that District, ECF 29 at 17,[8] the median time to resolution does not provide an adequate picture of judicial caseloads as it accounts for those cases filed and quickly resolved without need for significant court intervention, as well as cases that are not complex products liability cases like those at issue here. A more complete picture of judicial caseload data reflects that there is little meaningful difference between the median time to resolution between the Northern District of Texas and the Western District of Washington—but that the Western District of Washington which

---

[5] Lyft, *Let's Grow Together*, https://lyft.com/careers/life-at-lyft (last accessed Nov. 12, 2025).
[6] *Id.*
[7] James Risley, *Lyft to Expand Carpool Service to Six Cities Including Seattle, San Jose*, https://www.geekwire.com/2016/lyft-expanding-carpool-service-6-cities-including-seattle-silicon-valley/ (last accessed Nov. 12, 2025).
[8] Given that the JCCP is over six years old, Lyft's argument underscores the importance of filing actions in efficiently managed dockets, one of the reasons many plaintiffs have chosen to file their cases in federal court and why Movant now petitions for an MDL.

has 46.9 percent fewer cases filed in the district and 9.9 percent fewer actions assigned to each judge.[9]

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Panel transfer the Actions to the Northern District of California for coordinated or consolidated proceedings under 28 U.S.C. § 1407 before the Honorable Charles R. Breyer. In the alternative, the Panel should transfer the Actions to one of the other numerous, well-qualified judges in the Northern District of California or to the Western District of Washington.

Dated: November 17, 2025

Respectfully submitted,

/s/ Samantha Hoefs
**Samantha Hoefs**
Marlene Goldenberg
Nigh Goldenberg Raso & Vaughn PLLC
60 South Sixth Street, Suite 2800
Minneapolis, MN 55402
Telephone: 612.445.0202
Facsimile: 202.297.7297
Email: shoefs@nighgoldenberg.com

*Counsel for Plaintiff-Movant J.E.*

---

[9] U.S. Courts, *Caseload Statistics Data Tables*, https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last accessed Nov. 12, 2025).